**Reversed and Rendered and Memorandum Opinion filed August 28, 2025.**



In The

# Fifteenth Court of Appeals

### NO. 15-24-00080-CV

## TEXAS HEALTH AND HUMAN SERVICES COMMISSION, Appellant

## V.

## JESSICA CANTO, Appellee

**On Appeal from the 200th District Court,
Travis County, Texas
Trial Court Cause No. D-1-GN-19-008542**

### MEMORANDUM OPINION

The administrative law judge's (ALJ) order affirmed the Health and Human Services Commission's (HHSC) decision that Jessica Canto committed reportable neglect in her duties at a State Supported Living Center. The trial court reversed the ALJ's order. The question before us is whether the ALJ's order was supported by substantial evidence. Because it was and the district court nevertheless reversed it, we reverse the district court's judgment and render judgment reinstating the ALJ's order.

## FACTUAL BACKGROUND

Canto worked at the State Supported Living Center in Corpus Christi as a Direct Support Professional-IV. In November 2018, Canto agreed to provide one-to-one care for a resident we will refer to as J.S. J.S. suffered from an intellectual disability, schizophrenia, post-traumatic stress disorder, and intermittent explosive disorder. J.S. was known to be aggressive and had previously caused harm to staff members and to property, sometimes using a fire extinguisher as a weapon.

As part of providing one-to-one supervision to J.S., on November 4, 2018, Canto agreed to and signed a level-of-supervision sheet stating that there were to be no physical barriers between her and J.S. at any time. J.S.'s Positive Behavior Support Plan included a list of targeted behaviors in J.S. for the one-to-one supervision, including physical and verbal aggression and property destruction. According to the Plan, the functional replacement behavior for aggression or property destruction was for J.S. to ask for space or a break. During this replacement behavior, including asking for space, anyone could leave J.S. except for his one-to-one supervisor. The Plan also called for interventions with J.S. if he became aggressive or destructive, which included telling him to stop or put the weapon down, inviting him to a different environment to burn off energy, standing between him and his targets, and the use of restraint protection skills. Canto testified she was familiar with this Plan.

During her one-to-one supervision of J.S., however, Canto admits she allowed physical barriers between her and J.S. when he became particularly agitated and aggressive. Responding to J.S.'s request for space and claiming he threatened her, Canto followed J.S. in a van and watched him while he walked the facility's grounds. During Canto's time observing him from the van, J.S. went to an outdoor pavilion on the property and obtained a fire extinguisher. J.S. then proceeded into a residence

facility with the fire extinguisher while Canto watched from the van and then later watched him from outside a closed door through a window. Canto later went in to the building where J.S. was, but remained in a hallway while he entered another room with the fire extinguisher with other residents present. Eventually, other workers helped obtain the fire extinguisher from J.S. before anyone was harmed.

HHSC initiated an investigation into the incident, which included review of a video of the incident with Canto, gathering exhibits, and taking statements from multiple witnesses. At the conclusion of the investigation, HHSC found that Canto neglected individuals receiving services at the facility by allowing barriers between herself and J.S., which could have led to harm to J.S. or to other residents. HHSC's investigation led to a recommendation that Canto's name be placed on the Employment Misconduct Registry for reportable neglect. *See* Tex. Hum. Res. Code § 48.403; Tex. Health & Safety Code § 253.007. Canto challenged HHSC's conclusion and was granted a contested case hearing before an ALJ who reviewed the evidence, including evidence that Canto believed she was in danger at the time she allowed a barrier between her and J.S., and heard testimony from witnesses on both sides. *See* Tex. Hum. Res. §§ 48.404(b), .405. The ALJ agreed that Canto committed reportable conduct. Canto filed a motion for rehearing based on her belief that she was in danger from J.S., which the ALJ denied by written order. Canto then filed a suit for judicial review before a Travis County district judge, who reversed HHSC's order. HHSC then filed this appeal.

ANALYSIS

I.     The substantial evidence standard of review applies.

Canto contends that the standard of review in this appeal differs from the usual review of an agency ruling because the proceeding below is "quasi-criminal" and used a preponderance of the evidence standard. Canto contends that case law

3

relating to the substantial evidence standard do not apply because they "all deal[ ] with administrative decisions."

As HHSC points out, Canto has confused the burden of proof at the agency level with the standard of review on appeal. While Canto is correct that it was HHSC's burden of proof to demonstrate at the contested case hearing that Canto committed neglect and that the neglect constituted reportable conduct, on review of the ALJ's decision in the trial court and on appeal, the standard is substantial evidence, and the burden of proof is Canto's. Tex. Gov't Code § 2001.174; *Tex. Comm'n on Env't Quality v. Maverick Cnty.*, 642 S.W.3d 537, 547 (Tex. 2022). Canto is entitled to appeal the ALJ's order, but the Administrative Procedure Act governs that appeal. Tex. Hum. Res. Code § 48.406(c).

In applying the substantial evidence standard, a court "may not substitute [its] judgment for the judgment of the state agency on the weight of the evidence." *Dyer v. Texas Comm'n on Env't Quality*, 646 S.W.3d 498, 514 (Tex. 2022). In assessing whether the agency's decision is "reasonably supported by substantial evidence," Tex. Gov't Code § 2001.174(2)(E), the issue is not whether the agency's decision is correct, but only whether the record demonstrates some reasonable basis for the decision. *Maverick Cnty.*, 642 S.W.3d at 544 ("The true test is not whether the agency reached the correct conclusion, but whether some reasonable basis exists in the record for the action taken by the agency.") (quoting *Texas Health Facilities Comm'n v. Charter Med.-Dallas, Inc.*, 665 S.W.2d 446, 452 (Tex. 1984)). Neither we nor the trial court may substitute our judgment for the judgment of the state agency on the weight of the evidence. *Dyer*, 646 S.W.3d at 514. Instead, "[w]e must uphold the agency's ultimate decision if the evidence 'is such that reasonable minds could have reached the conclusion that the agency must have reached in order to justify its action.'" *Id.* (quoting *Charter Med.-Dallas, Inc.*, 665 S.W.2d at 453).

The agency's findings, inferences, conclusions, and decisions are presumed to be supported by substantial evidence, and the burden is on the contestant to demonstrate otherwise. *Maverick Cnty.*, 642 S.W.3d at 547; *Upper Trinity Reg'l Water Dist. v. Nat'l Wildlife Fed'n*, 514 S.W.3d 855, 861 (Tex. App.—Houston [1st Dist.] 2017, no pet.). Whether the contestant has met this burden is a question of law, *see Dyer*, 646 S.W.3d at 505, and on review, we focus on the agency's decision without deference to the trial court's judgment, *see Texas Dep't of Pub. Safety v. Alford*, 209 S.W.3d 101, 103 (Tex. 2006) (per curiam) (noting that appellate court applies substantial evidence review without deference to district court).

## II.    Substantial evidence supports the ALJ's order.

### A.  Substantial evidence supports the ALJ's finding of reportable neglect.

The Human Resources Code defines "reportable conduct" as "abuse or neglect that causes or may cause death or harm to an individual receiving agency services." Tex. Hum. Res. Code § 48.401(5)(A). In the proceedings below, it is not alleged that Canto abused J.S. Rather, the question was whether Canto's conduct met the definition of "neglect."

When, as here, the reported person is a direct provider, "neglect" means "a negligent act or omission which caused or may have caused physical or emotional injury or death to an individual receiving services or which placed an individual receiving services at risk of physical or emotional injury or death." 40 Tex. Admin. Code § 711.19(a) (2016).[1] As an example of what constitutes neglect, the rule provides an example that is particularly applicable to the facts before us: "The failure to establish or carry out an appropriate individual program plan or treatment plan for a specific individual receiving services . . . which placed an individual

---

[1] This provision has been transferred to 26 Tex. Admin. Code § 711.19.

receiving services at risk of physical or emotional injury or death." *Id.* § 711.19(b)(1).

Here, the ALJ concluded that HHSC met its burden of proof on the question of neglect based on evidence that Canto allowed physical barriers between her and J.S. while required to provide one-to-one supervision and that Canto's actions placed J.S. and other residents at a significant injury risk. The first issue we must decide, then, is whether the ALJ could have reasonably reached this conclusion based on the evidence before her. We conclude substantial evidence supports the ALJ's order.

Canto admitted before the ALJ that the one-to-one care she agreed to provide J.S. required no physical barriers between them at any time. She also admitted during her testimony, that she allowed physical barriers between her and J.S. at least three times: when she watched J.S. from a van while he obtained a fire extinguisher, when she watched from a van and then through a closed door as J.S. entered a residence facility with the fire extinguisher, and again when she remained in the hallway while he entered another room with the fire extinguisher. This evidence is largely undisputed and supports the ALJ's order. In addition, another Behavioral Health Specialist at the facility in 2018, Paige Kramer, testified that it was improper for Canto to allow barriers between her and J.S. Kramer also testified that it was improper for Canto to break one-to-one contact even if Canto feared for her own safety. Three other witnesses also testified for HHSC, while two witnesses testified in support of Canto, in addition to Canto herself. The ALJ also considered numerous exhibits, including the videotape of the incident, Canto's written statement, and the investigation report from the incident.

The evidence is sufficient to constitute substantial evidence on which the ALJ could have reasonably based her order, regardless of the evidence Canto presented in her defense. Canto admitted that she allowed barriers between her and J.S., that

6

she knew one-to-one supervision required no barriers, and knew that a one-to-one supervisor was not allowed to leave even if the resident, in this case J.S., requested he be given space. The video of the incident corroborated Canto's testimony, and Kramer testified that Canto's behavior violated applicable rules and constituted neglect.

Canto, of course, presented evidence to the contrary. But it is up to the ALJ to determine the credibility of the witnesses and evidence before it, and courts are not to second-guess such credibility determinations or to weigh competing evidence presented to the ALJ. *Dyer*, 646 S.W.3d at 514. Our decision is merely whether there is sufficient evidence to support the ALJ's decision and, here, there is.

## B. Substantial evidence supports the ALJ's refusal to apply the imminent harm exception.

Canto contends that even if there is substantial evidence of neglect in the administrative record, an exception should have applied to her case. Specifically, Rule 711.23 provides that "neglect" does not include "actions that a direct provider may reasonably believe to be immediately necessary to avoid imminent harm to self, individuals receiving services, or other individuals provided the actions are limited only to those actions reasonably believed to be necessary under the existing circumstances." 40 Tex. Admin. Code § 711.23(3) (2017). Canto contends that J.S. threatened her and that she believed his threats because he had already attacked two other staff members. Moreover, the record shows that Canto stands 4' 11'', while J.S., a male, is 6' 3" and weighs significantly more than Canto.

Canto contends that if she subjectively believed she had to allow a barrier between her and J.S. to avoid imminent harm to herself, then she cannot be found to have committed neglect under this Rule. HHSC, contends, however, that this exception must be reviewed under an objective standard, not a subjective one, for

what "a direct provider" may have "reasonably believed to be necessary under the existing circumstances."  We agree.

Based on the record before her, the ALJ could have reasonably concluded that Canto's actions were not objectively reasonable even if she subjectively felt threatened.  At the administrative hearing, Canto's attorney read the text of Rule 711.23(3) to Kramer, whom J.S. had previously attacked with a fire extinguisher, and asked if the exception should apply to Canto's actions.  Kramer responded that the video of the incident raises questions about Canto's judgment when allowing J.S. to enter the building with a fire extinguisher while Canto watched from outside.  According to Kramer, allowing J.S. some space did not mean that Canto was justified in allowing physical barriers between Canto and J.S. such that Canto could not protect other residents.  Kramer testified that Canto's actions were unreasonable under the circumstances.

To be sure, Canto testified that her actions were reasonable in light of the threat she felt, and other witnesses on her behalf agreed with her.  But it is not up to this Court, just as it was not up to the trial court, to second-guess the ALJ and weigh the evidence ourselves.  Again, it is up to the ALJ to weigh the credibility of witnesses and other evidence, *Dyer*, 646 S.W.3d at 514, and here, the ALJ had sufficient evidence to reasonably conclude that it was not reasonable for Canto allow physical barriers between herself and J.S. during the incident, even if she felt threatened personally.[2]  As such, the trial court erred in reversing the ALJ's order.

---

[2] Canto contends that the ALJ did not consider her evidence or argument that the exception applies.  On the contrary, the record reveals that Canto's lawyer raised the exception when cross-examining Kramer.  Her lawyer also relied on the exception in Canto's motion for rehearing before the agency, which the ALJ denied by written order.

## CONCLUSION

Substantial evidence supports the ALJ's order. We accordingly reverse the trial court's judgment and render judgment reinstating the ALJ's order.

/s/Scott K. Field
Scott K. Field
Justice

Panel consists of Chief Justice Brister and Justices Field and Farris.